UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| NORMAN W. BERNSTEIN and PETER M. | ) | |
| RACHER, AS TRUSTEES OF THE THIRD | ) | |
| SITE TRUST FUND, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-0427-RLY-DML |
| | ) | |
| PATRICIA A. BANKERT, individually, | ) | |
| and in her capacity as Personal | ) | |
| Representative of the Estate of Jonathan W. | ) | |
| Bankert, Sr., JONATHAN W. BANKERT, | ) | |
| JR., GREGORY BANKERT, ROBERT H. | ) | |
| BANKERT, KATHERINE L. BANKERT, | ) | |
| CYNTHIA A. RUSSELL, ENVIROCHEM | ) | |
| CORPORATION, and AUTO OWNERS | ) | |
| MUTUAL INSURANCE COMPANY, | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANT AUTO-OWNERS' MOTION FOR SUMMARY
JUDGMENT**

Norman W. Bernstein and Peter M. Racher, as Trustees of the Third Site Trust

Fund ("Plaintiffs"), seek to recover environmental response costs and other damages from

the Bankerts and Enviro-Chem Corporation under the Comprehensive Environmental

Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* for

property referred to as the Third Site.  They also seek a declaratory judgment against

various insurance companies, including Auto-Owners Mutual Insurance Company

("Auto-Owners"), regarding coverage under their insurance policies.

1

Auto-Owners moves for summary judgment against the Plaintiffs on two grounds. First, Auto-Owners contends that Plaintiffs' claims against Enviro-Chem are time barred by Indiana Code § 23-1-45-7, as this action was not filed within two years after the dissolution of Enviro-Chem.  Since Enviro-Chem cannot be held liable for any damages, its alleged insurers cannot be responsible for any coverage under the insurance policies as there is no liability to indemnify.  Therefore, Auto-Owners should be dismissed from this lawsuit.  Second, Auto-Owners contends that its insurance coverage, or lack thereof, for the Enviro-Chem Site has already been conclusively determined in previous litigation as it might pertain to other insureds such as Patricia Bankert.  The judgment in that action bars this action against Auto-Owners pursuant to the doctrine of res judicata.  Therefore, Auto-Owners is entitled to dismissal of this action.  For the reasons set forth below, the court **DENIES** Auto-Owners' motion.

## I.    Background

From 1977 until its closure in May 1982, Enviro-Chem[1] was engaged in brokering and recycling industrial and commercial wastes, and was located at 865 South State Road 431, Zionsville, Indiana.  (Auto-Owners' Reply Brief, Ex. B, Cross-Claim, *United States v. The Environmental Conservation and Chemical Corporation, et al.*, IP 83-1419-C ("Superfund Cross-Claim") ¶ 9).  Jonathan Bankert, Sr. and Patricia Bankert were the

---

[1]  Technosolve, Inc. ("Technosolve")  and Enviro-Chem Corporation merged on March 1, 1980, leaving Technosolve as the surviving corporation.  Environmental Conservation and Chemical Corporation changed its name to Enviro-Chem Corporation on March 24, 1980. (Auto-Owners' Reply Brief, Ex. A).  It remains an open question why, in the suit filed in 1984 by Auto-Owners, Environmental Conservation and Chemical Corporation was listed as a defendant.

owners of the real property upon which Enviro-Chem was located. (Auto-Owners' Reply Brief, Ex. C, Complaint, *United States v. The Environmental Conservation and Chemical Corporation, et al.*, IP 83-1419-C ("Superfund Complaint") ¶ 6). Jonathan Bankert served as president of Enviro-Chem, and Roy Strong and David Finton served as officers and directors of Enviro-Chem. (*Id.* ¶¶ 7, 9-10). The industrial and commercial wastes were transported to the Enviro-Chem Site by Pratt & Lambert, Inc. ("Pratt & Lambert") and Union Carbide Corporation ("Union Carbide"), and were held in bulk tanks and equipment owned by Wastex Research, Inc. ("Wastex"). (*Id.* ¶¶ 12, 207, 258, 290). Gary Watson was a court-appointed Receiver of Enviro-Chem as of July 1, 1981. (*Id.* ¶ 11).

On May 5, 1982, Enviro-Chem was closed. (*Id.* ¶ 187; Superfund Cross-Claim ¶ 12). In September of 1982, it was reported that "approximately 25,000 drums and 56 bulk storage tanks were on the site." (*Id.* ¶ 287). These drums and bulk storage tanks were located outside, and were allowed to deteriorate and release wastes[2] into the ground and surface water standing on-site. (Superfund Cross-Claim ¶ 12). The surface water contamination eventually contaminated Finley Creek, which flows into Eagle Creek Reservoir, a major source of drinking water in the Indianapolis area. (Superfund Complaint ¶ 289).

On July 8, 1983, the United States Environmental Protection Agency ("EPA")

---

[2] The wastes being stored at the Enviro-Chem site included acetone, toluene, xylene, cadmium, chromium, lead, nickel, mercury, methylene chloride, and ethyl benzene. (Superfund Complaint ¶ 287).

commenced a cleanup of the Enviro-Chem site.  (Superfund Complaint ¶ 294).  At that time, EPA authorized over $3 million to implement the cleanup. (*Id*.).

### A.     The Superfund Action

On September 21, 1983, the United States of America, on behalf of the Administrator of the EPA, filed a Complaint, entitled *United States v. The Environmental Conservation and Chemical Corporation, et al.*, IP 83-1419-C (the "Superfund Action"), against more than 250 defendants, including Enviro-Chem, Jonathan and Patricia Bankert, Roy Strong, David Finton, Wastex, Pratt & Lambert, and Union Carbide.  (*See* Superfund Complaint).  The Complaint sought to recover, *inter alia*, funds expended by the United States for response costs associated with the Enviro-Chem Site, and a "declaratory judgment holding the defendants jointly and severally liable for future costs incurred by the United States for investigations, removal and remedial actions, and enforcement activities related to the Enviro-Chem [S]ite."  (*Id*. Prayer for Relief ¶¶ 2, 3).

On that same day, September 21, 1983, Union Carbide and 133 other defendants (the "defendant class") entered into a Consent Decree to clean up the surface of the Enviro-Chem Site.  The Consent Decree "resolve[d] a portion of the government's claim against [those defendants.]"  (Superfund Cross-Claim ¶ 16).

On November 8, 1983, Union Carbide and the defendant class "listed in Exhibit A"[3] filed a Cross-Claim against Enviro-Chem, Jonathan and Patricia Bankert, Roy

---

[3]  According to the Cross-Claim, Union Carbide and the 133 other named "cross-claimants contracted directly or indirectly with Enviro-Chem and/or Watson for Enviro-Chem

Strong, David Finton, Gary Watson (in his official capacity), and Wastex, Inc..  The Cross-Claim sought recovery of the funds the cross-claimants expended with regard to the surface cleanup (roughly $3 million), and a declaratory judgment that they were not liable for any additional future costs arising from the Enviro-Chem site.  (*Id.*, Prayer for Relief ¶¶ 1, 2).

### B.     The 1984 Declaratory Judgment Action

On April 5, 1984, Auto-Owners filed a Partial Class Action Complaint against Environmental Conservation and Chemical Corporation, Jonathan and Patricia Bankert, Roy Strong, David Finton, Gary Watson, Wastex, Enviro[-C]hem, Technosolve, Hazardous Materials Management, Inc. ("Hazardous Materials Management"), Union Carbide, and Pratt & Lambert "on behalf of themselves and all others similarly situated" (the "1984 Action"). (Auto-Owners' Ex. B, Complaint, *Auto-Owners Insurance Company v. Environmental Conservation and Chemical Corporation, et al.*, IP 84-644C ("the 1984 Complaint")).  According to the 1984 Complaint, the insureds under the Auto-Owners' policies were Environmental Conservation and Chemical Corporation, Enviro-Chem, Jonathan and Patricia Bankert, Technosolve, and Hazardous Materials Management.  The defendant class consisted, in part, of Union Carbide, Pratt & Lambert, and "all cross-claimants in [the Superfund Action]," which was currently pending at that time.  (*Id.* ¶

---

and/or Watson (1) to handle and to recycle wastes generated by cross-claimants and to permanently dispose of the residue of this recycling operation, and/or (2) to serve as a broker for cross-claimants and to transport cross-claimants' wastes to a treatment or disposal facility, all of which was to be performed in accordance with all applicable laws and regulations and in an environmentally sound manner."  (Superfund Cross-Claim ¶ 10).

3.2).  In the 1984 Action, Auto-Owners sought a declaratory ruling on coverage and the

application of the following exclusion in its policies:

> No coverage is provided by this policy for claims, suits, actions or
> proceedings against the insured arising out of the discharge, disposal,
> release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic
> chemicals, liquids or gases, waste material or other irritants, contaminants
> or pollutants into and upon land, the atmosphere or any water course or
> body of water.

(*Id*. ¶¶ 4.2, 5.4.1, 5.4.2).  No class was ever certified.

On December 21, 1990, the court entered a default judgment against

Environmental Conservation and Chemical Corporation, Roy Strong, David Finton, Gary

Watson, Enviro-Chem, Technosolve, and Hazardous Materials Management.  (Auto-

Owners' Ex. C, Default Judgment ("Default Judgment")).  On August 29, 1991, the court

entered an "Agreed Judgment" between the plaintiff, Auto-Owners, and the defendants,

Union Carbide, Pratt & Lambert, Jonathan and Patricia Bankert, and Wastex.  (Auto-

Owners' Ex. D, Agreed Judgment ("Agreed Judgment")).  The Agreed Judgment stated,

in relevant part:

> Plaintiff, Auto-Owners Insurance Company, by counsel, and
> defendants, Union Carbide Corp., Pratt & Lambert, Inc., Jonathan W. and
> Patricia A. Bankert, and Wastex Research, Inc., hereby agree that plaintiff
> is entitled to judgment in the above cause.  In particular, the parties agree:
>
>          *   *   *
>
> 3.     That Auto-Owners has no duty to indemnify its insureds (Exhibit
>        "A") and no liability to its insureds under either the general liability

or umbrella policies identified in Exhibit "A"[4], whether said liability is claimed under theories of reimbursement, subrogation, indemnity, nuisance, breach of contract, or otherwise, for any claims made against them arising out of the Superfund lawsuit or otherwise arising out of Enviro-Chem site activities or conditions which constitute release or otherwise of pollutants into the environment.

4.    That Auto-Owners has no duty to indemnify the undersigned defendants and no liability to such defendants under either the general liability or umbrella policies identified in Exhibit "A", whether said liability is claimed under theories of reimbursement, subrogation, indemnity, nuisance, breach of contract, or otherwise, for any claims made against them arising out of the Superfund lawsuit or otherwise arising out of Enviro-Chem site activities or conditions which constitute release or otherwise of pollutants into the environment.

(Agreed Judgment ¶¶ 3, 4 ).

## C.    Dissolution of Enviro-Chem

Environmental Conservation and Chemical Corporation, also known as Enviro-Chem, was administratively dissolved by the Indiana Secretary of State on December 31, 1987.  (Auto-Owners' Ex. P, Secretary of State's Entity Information for Enviro-Chem).

---

[4] The Auto-Owners' policies listed in Exhibit "A" to the Agreed Judgment are: Policy No. 772302 09192738, a comprehensive commercial policy, in force from April 25, 1977 to April 25, 1978; Policy No. 774602 09169682, a comprehensive commercial policy, in force from April 25, 1978 to April 25, 1979; Policy No. 774602 09169682, a comprehensive commercial policy, in force from April 25, 1979 to April 25, 1980; Policy No. 774602 09108464,  a comprehensive commercial policy, in force from April 25, 1980 to April 25, 1981; Policy No. Policy No. 774602 09108464,  a comprehensive commercial policy, in force from April 25, 1981 to April 25, 1982; Policy No. 774602 09108464,  a comprehensive commercial policy, in force from April 25, 1982 to August 2, 1982; Policy No. 792102 09204882, a commercial umbrella policy, in force November 1, 1979 to December 1, 1980; Policy No. 792102 09196704, in force April 25, 1980 to April 25, 1981;  Policy No. 792102 71196704, in force April 25, 1981 to April 25, 1982; and  Policy No. 71196704, in force April 25, 1982 to August 7, 1982.

**D.      Facts Relating to the Third Site**

On May 29, 1987, ERM North Central, an environmental consulting firm, sent to the EPA a stream survey of Finley Creek that indicated that contamination south of Enviro-Chem along Finley Creek did not appear to be emanating from the Enviro-Chem Site.  (Plaintiffs' Ex. 4, Stream Survey of Finley Creek ("Stream Survey") at 4).  On September 25, 1987, Region V of the EPA entered "Superfund Record of Decision – Northside Sanitary Landfill ("NSL")/Environmental Conservation and Chemical, IN." ("1987 ROD").  The 1987 ROD set forth a plan for remediation of NSL and Enviro-Chem, which were two separate CERCLA sites on the National Priorities List. (Plaintiffs' Ex. 5, Superfund Record of Decision ("1987 ROD").  Figure 2, Figure 3, and Figure 4 of the 1987 ROD are maps depicting the NSL and Enviro-Chem Sites.  All three figures depict those sites as separate from and to the north of what is now known as the Third Site.  (*Id*., Figures 2, 3, 4 at 41-43).  The EPA determined that the alternative selected for the Enviro-Chem Site was consistent with the National Contingency Plan. (*Id.* at 25-28).  No determination was made as to any required investigation or remediation of the area now known as the Third Site.

On October 13, 1988, Elizabeth Maxwell of the EPA sent a letter to a number of lawyers involved in the NSL/Enviro-Chem sites.  (Plaintiffs' Ex. 6, Letter from Elizabeth Maxwell of EPA ("Maxwell Letter")).  This letter stated, in relevant part:

> This letter is to advise you that we have concluded that the "third area of contamination" referenced above is the result of the Enviro-Chem operation.  Our conclusion is based on pictures demonstrating the presence

> of large horizontal tanks being placed in this area during the time that
> Enviro-Chem was in operation, testimony of James Clouse, an Enviro-
> Chem employee, who testified that Enviro-Chem had waste placed there
> and that the tanks were subsequently removed because they were leaking
> (see copies of State –95 Hearing Transcript); deposition of Ted Liebtag, the
> Enviro-Chem hauler, who stated that he placed waste designated for
> Enviro-Chem in these tanks; and deposition of Mrs. Patricia Bankert who
> testified that chunks of concrete were the only materials that she and Mr.
> Bankert had placed in the third area of contamination.

(*Id.*; *see also* Complaint ¶ 15 ("Third Site was used by the Bankerts as a staging and

storage area for liquid hazardous substances which were used in

Enviro[-]Chem's operations.")).

On January 22, 1990, Charles McKinley, Assistant Regional Counsel for the EPA,

wrote a letter to Norman Bernstein relating to the "Enviro[-]Chem Consent

Decree/Amendment to ROD," indicating, on a page attached to the letter, a proposed

change to the 1987 ROD, which reads as follows:

> This ROD amendment selects separate and distinct remedies for [Enviro-
> Chem] and NSL, which do not encompass the additional area of
> contamination south of [Enviro-Chem] that was discussed in the 1987 ROD.
> Pre-design investigations indicated that this was a discrete contaminated
> area, and the cleanup of it will be pursued in another manner.

(Plaintiffs' Ex. 7, Letter from Charles McKinley of EPA ("McKinley Letter"). On June

7, 1991, the EPA issued a "Declaration for the Record of Decision Amendment ("1991

ROD Amendment"), which incorporated the language cited above. (Plaintiffs' Ex. 3,

Declaration for the Record of Decision Amendment ("1991 ROD Amendment") at 8).

In March 1991, the United States lodged a proposed "Consent Decree" in the

Superfund Action ("1991 Consent Decree"). The 1991 Consent Decree again depicted

the Enviro-Chem site separate and north of the area later known as the Third Site.

(Plaintiffs' Ex. 10, 1991 Consent Decree ("1991 Consent Decree") at 13; Plaintiffs' Ex.

11, 1991 Consent Decree (with attachments) at 89). The 1991 Consent Decree was

approved by the court on September 10, 1991.  (Plaintiffs' Ex. 12, Order Granting

Lodging of Consent Decree).

On March 22, 1996, the EPA issued an administrative order entitled *In the Matter*

*of Third Site*, Docket No. V-W-96-C-343 ("1996 Third Site AOC").  (Auto-Owners' Ex.

L, Administrative Order).  In the 1996 Third Site AOC, the EPA made the following

Finding of Fact:

> 2.    Historical aerial photographs of the Site area dated from 1950 to
>        1986 indicate the area was used for tank and drum storage and truck
>        parking in the mid-to-late 1970s.  Testimony from former Enviro-
>        Chem employees and waste haulers indicate that waste handling and
>        disposal at Third Site was a direct result of operations at the Enviro-
>        Chem Site.  Wastes disposed of at Third Site appear to be the same
>        waste types and from the same commercial facilities as the wastes
>        disposed of at the Enviro-Chem Site.  Third Site property is currently
>        owned by the Bankert family and its corporate entities, which is also
>        true for the Enviro-Chem Superfund Site.

(*Id.*).  The 1996 Third Site AOC found the Third Site to be a "facility" under CERCLA

and ordered the respondents to engage in cleanup activities of that facility.  (*Id.*).  The

respondents included, *inter alia*, the Estate of Jonathan Bankert, Sr., Patricia Bankert,

Pratt & Lambert, and Union Carbide.  (*Id.*, Ex. A).

In a letter dated April 2, 1996, Richard C. Karl, Chief of the Emergency &

Enforcement Response Branch of the EPA, sent a letter to potentially responsible parties

("PRPs") regarding the Third Site, which stated in relevant part:

> U.S. EPA has determined that the parties identified as potentially
> responsible parties (PRPs) at the Envirochem Site are also PRPs at the
> Third Site.  This Site was used for staging hazardous substances from the
> Enviro[-C]hem Site.  You or your company were identified as a PRP at the
> Enviro[-C]hem Site and you and your company are therefore considered a
> PRP for Third Site.

(Auto-Owners' Ex. M, Letter from Richard Karl of EPA).

In a September 16, 1996 Action Memorandum, Michael McAteer ("McAteer"),

On-Scene Coordinator, Remedial Response Branch, repeated the same factual findings as

the Administrative Order, again stressing that the Third Site's contamination was a direct

result of the operations at the Enviro-Chem Site.  (Auto-Owners' Ex. N, September 16,

1996 Action Memorandum at 2).  This finding was also reported in a May 11, 2001

Enforcement Action Memorandum written by McAteer.  (Auto-Owners' Ex. O, May 11,

2001 Enforcement Action Memorandum at 2).  According to these memorandums,

cleanup activities of any type at the Third Site did not begin until approximately the Fall

of 1996.

The remedy currently being implemented at the Third Site is different than the

remedy being implemented at the Enviro-Chem Site.  (Affirmation of Ronald Hutchens

("Hutchens Aff.")October 21, 2009 ¶ 4).

### E.    The 2008 Action

On April 1, 2008, Plaintiffs, as Trustees of the Third Site Trust Fund, filed the

present lawsuit (the "2008 Action").  According to the Affirmation of Norman W.

Bernstein:

>  2.  The Third Site Trust Fund was created to receive monies from the settlors of the Trust and to carry out the obligations of the settlors of the Trust to the United States Environmental Protection Agency under two Consent Orders entered in 1999 and 2002, respectively.

>  3.  There are no beneficiaries of the Third Site Trust Fund in the traditional sense, except the site itself.  Rather, the settlors of the Trust have duties to make payments into the Trust sufficient to implement the study and removal actions required by the United States Environmental Protection Agency.

(Plaintiffs' Ex. 2, Affirmation of Norman Bernstein ("Bernstein Aff.") ¶¶ 2, 3).  The settlors of the Third Site Trust Fund are PRPs of the "Third Site."  (*See* 1984 Complaint ¶ 4; *see also* Auto-Owners' Ex. R, 64 F.R. 50086 ("Proposed Agreement Pursuant to Section 122(g) and (h) of the Comprehensive Environmental Response, Compensation, and Liability Act for the Zionsville Third Site Superfund Site") dated September 5, 1999; Auto-Owners' Ex. S, 67 F.R. 61624 ("Proposed Agreement Pursuant to Section 122(g) and (h) of the Comprehensive Environmental Response, Compensation, and Liability Act for the Zionsville Third Site Superfund Site"), dated October 1, 2002)).  A total of 111 companies (*i.e.*, settlors), including Union Carbide and Pratt & Lambert, have paid money into the Third Site Trust Fund.  (Bernstein Aff. ¶ 6).  Currently, the number of settlors is 35.  (*Id*. ¶ 4).

In this lawsuit, Plaintiffs seek to recover environmental response costs and other damages relating to the environmental cleanup of the Third Site from Patricia Bankert, individually, and in her capacity as Personal Representative of the Estate of Jonathan W.

Bankert, Sr.; Jonathan W. Bankert, Jr.; Gregory Bankert; Robert H. Bankert; Katherine L. Bankert; Cynthia A. Russell; Enviro-Chem; Auto-Owners; and three other insurance companies not a part of this motion.  Plaintiffs also seek a declaratory judgment against the insurance companies, including Auto-Owners, regarding coverage for the environmental cleanup of the Third Site under their insurance policies.

As the Complaint pertains to Auto-Owners, Plaintiffs "seek a declaration that [Auto-Owners] is obligated to provide insurance coverage, subject to [its] respective policy limits, for the liabilities in the amount owed by their policyholders to the Trustees pursuant to Counts I through V of this Complaint."  (Complaint, Count VII, ¶ 53).  The Complaint alleges that Jonathan and Patricia Bankert were the named insureds in the policies at issue in this case.  (*Id*. ¶ 27).  The insurance policies at issue in the 1984 Action mirror those in the present Action.  (*Id*., Ex. 1).  However, the Complaint includes two policies that are not identified in the 1984 Action.  They include: Policy No. 774602 09169682, with a policy period of April 25, 1978 to April 25, 1979; and Policy No. 774602 09169682,[5] in force from April 25, 1979 to April 25, 1980.  (Affidavit of Peter M. Racher filed in support of Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment ("Racher Aff."), Exs. 1, 2).  Neither of these policies has the "absolute pollution exclusion" endorsement expressly set forth in the 1984 Complaint.  Each of these policies, however, has an endorsement that provides "personal injury

---

[5] These two policies were also listed in the Agreed Judgment.  (*Compare* 1984 Complaint ¶¶ 4.1-4.6 *with* Agreed Judgment, Ex. A).

coverage" with an insuring clause as follows:

> The Company will pay on behalf of the insured all sums which the insured
> shall become legally obligated to pay as damages because of injury
> sustained by any person or organization and arising out of one or more of
> the following offenses committed in the conduct of the named insured's
> business:
> Group C – wrongful entry or eviction, or other invasion of the right of
> private occupancy.

(*Id.*).  Plaintiffs seek a coverage determination under the personal injury provisions of the

Auto-Owners' policies.  (Complaint, Ex. 1).

## II.    Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue of material fact and that the moving party is entitled to a judgment as

a matter of law."  FED. R. CIV. P. 56(c).  In considering a motion for summary judgment,

a court must draw all reasonable inferences in the light most favorable to the non-movant.

*See Spraying Sys. Co. v. Delavan, Inc*., 975 F.2d 387, 392 (7th Cir. 1992).  The court's

function is not to weigh the evidence and determine the truth of the matter, but to

determine whether there is a genuine issue for trial.

In determining whether a genuine issue of material fact exists, the court must view

the record and all reasonable inferences in the light most favorable to the non-moving

party.  *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).  The moving party bears the

burden of demonstrating the "absence of evidence on an essential element of the non-

moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The non-

moving party may not, however, simply rest on the pleadings, but must demonstrate by specific factual allegations that a genuine issue of material fact exists for trial. *Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 201 (7th Cir. 1994) (citing *Celotex*, 477 U.S. at 322)).

### III. Discussion

#### A. Statute of Limitations

Auto–Owners first contends that Plaintiffs' action against Enviro-Chem, an administratively dissolved corporation, is time-barred under Indiana Code § 23-1-45-7. Thus, Plaintiffs' claims against the insurance companies are not viable as the insurers no longer have any liability to indemnify.

Indiana Code § 23-1-45, the statute upon which Auto-Owners relies in support of its argument, sets forth the procedure for "voluntary dissolution" of an Indiana corporation. The corporate board must propose dissolution and notify the shareholders to begin the procedure. IND. CODE § 23-1-45-2. "At any time after dissolution is authorized," the corporation may dissolve by filing articles of dissolution with the Indiana Secretary of State. IND. CODE § 23-1-45-3. Where notice is given to creditors as set forth by statute, the claims of creditors are subject to a two-year statute of limitations, as set forth in Indiana Code § 23-1-45-7(b)(3), (c).

Enviro-Chem was not voluntarily dissolved pursuant to Indiana Code § 23-1-45; rather, it was administratively dissolved pursuant to Indiana Code § 23-1-46. "A corporation administratively dissolved continues its corporate existence but may not carry

15

on any business except that necessary to wind up and liquidate its business and affairs . . .

and notify claimants . . . ."  IND. CODE § 23-1-46-2(c).  Thus, a corporation

administratively dissolved may not benefit from the two-year statute of limitations set

forth in Indiana Code § 23-1-45-7 because no notice of its dissolution was given to its

creditors.  As explained by the court in *United States v. SCA Servs. of Indiana, Inc.*, 837

F.Supp. 946 (N.D. Ind. 1993):

> In a case such as the one presently before this court in which a corporation
> has not properly dissolved pursuant to state law, this court holds that the
> corporation will always be amenable to suit under CERCLA.  Levin [the
> administratively dissolved corporation] has failed to take advantage of
> Indiana's two-year statute of limitations for creditor actions against
> dissolved corporations by failing to give notice of its dissolution to creditors
> as provided for by Indiana law.  Therefore, even if Levin has distributed all
> of its assets, it is not a "dead and buried" corporation as it is still subject to
> suit by its creditors.  It would defy simple logic for this court to hold that
> Levin, a corporation which can still be sued by its general business
> creditors, cannot be sued by a creditor proceeding under the federal
> CERCLA statute.  A corporation is simply not "dead and buried" until it has
> fully complied with the applicable statute of limitation laws and remains
> amenable to suit by its creditors.

*Id*. at 953 (interpreting the Indiana statute); *see also* IND. CODE § 23-1-45-5(b)(5)

("Dissolution of a corporation does not prevent commencement of a proceeding by or

against the corporation in its corporate name.").

The court therefore finds, based upon a plain reading of the applicable Indiana

statute and the *SCA Services* case, that Enviro-Chem is not entitled to the benefit of the

two-year statute of limitations as provided for by Indiana Code § 23-1-45-7(b)(3), (c).

The cases cited by Auto-Owners to the contrary do not persuade the court otherwise, as

both cases involve corporations that dissolved voluntarily. *See Lovold Co. v. Galyans Brownsburg, Inc.*, 764 N.E.2d 281 (Ind. Ct. App. 2002) (holding that plaintiffs' claim brought under Indiana's Underground Storage Tank Act, filed twelve years after the corporation voluntarily dissolved and provided newspaper notice, was barred pursuant to Indiana Code § 23-1-45-7(c)); *Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016 (7th Cir. 1995) (holding that plaintiff's CERCLA claim against a voluntarily dissolved Illinois corporation, commenced within five years of the corporation's dissolution as required by Illinois statute, was timely). Accordingly, Plaintiffs' claims are not time-barred under Indiana Code § 23-1-45-7.

### B.    Res Judicata

The doctrine of res judicata bars a plaintiff from re-litigating claims that have already been raised, or could have been raised, in a prior lawsuit. *Kratville v. Runyon*, 90 F.3d 195, 197 (7th Cir. 1996). "Res judicata applies when (1) there has been a final judgment on the merits in an earlier action, (2) there is an identity of parties or privies in the two suits, and (3) there is an identity of the causes of action in the two suits." *Jagla v. BMO Financial Group*, 248 Fed.Appx. 743, 744-45 (7th Cir. 2007) (citing *Ross v. Bd. of Educ. of Twp. High Sch., Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007)).

### 1.    Final Judgment on the Merits

As noted previously, the 1984 Action concluded with two judgments: a default judgment against Enviro-Chem and its related entities, and an Agreed Judgment against Jonathan, Sr. and Patricia Bankert, Union Carbide, Pratt & Lambert, and Wastex. The

17

court will begin its discussion with whether the Agreed Judgment is a final judgment on the merits against Jonathan, Sr. and Patricia Bankert, Union Carbide, Pratt & Lambert, and Wastex.

### a.    The Agreed Judgment

The Agreed Judgment, signed by the parties' respective lawyers, was tantamount to a settlement agreement.  The Agreed Judgment provided what amounts to a declaratory judgment in favor of Auto-Owners with regards to the Auto-Owners' policies listed in the attached Exhibit A.  Thus, although the Agreed Judgment contained a dismissal "without prejudice," the court finds the Agreed Judgment was a "final judgment" for purposes of the res judicata analysis.  *See Brunswick Corp. v. Chrysler Corp.*, 408 F.2d 335 (7th Cir. 1969) (finding that a consent judgment, which stated that parties stipulated that patents were valid and infringed and which, after reciting that defendant had taken license under both patents, that the action was dismissed "without prejudice" was a final adjudication on questions of validity and infringement).

### b.    The Default Judgment

A default judgment may give rise to res judicata.  *Porter's South Shore Cleaners, Inc. v. State* (1989), Ind. Tax, 512 N.E.2d 895, 898 n.1 ("[I]t is the law in Indiana that a default judgment is res judicata in the same cause of action (claim preclusion).").  The default judgment entered against Enviro-Chem consisted of a very short Order that reads, in pertinent part:

Plaintiff, Auto-Owners Insurance Company, by counsel, having

18

moved the court pursuant to F.R.C.P. 55 to enter a judgment by default on
Auto-Owners' Complaint in the above entitled action against
Environmental Conservation and Chemical Corporation, Roy M. Strong,
David M. Finton, Gary L. Watson, Enviro-Chem Corporation, Technosolve,
Inc., Hazardous Materials Management, Inc., which pleading is in the
following words and figures, to wit:

(H.I.)

        And the Court having examined said Motion and being otherwise
duly advised in the premises, now finds that the same should be granted.

        IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by
this Court that an entry of judgment by default is hereby entered pursuant to
F.R.C.P. 55 as to the defendants, Environmental Conservation and
Chemical Corporation, Roy M. Strong, David M. Finton, Gary L. Watson,
Enviro-Chem Corporation, Technosolve, Inc., Hazardous Materials
Management, Inc., and for all other appropriate relief.

(*See* Default Judgment).

        Notably, the Order does not list the Auto-Owners' insurance policies which are

subject to the default judgment.  The default judgment, therefore, only encompasses those

policies which were explicitly listed in the 1984 Complaint.  Policy No. 774602

09169682, with a policy period of April 25, 1978 to April 25, 1979, and Policy No.

774602 09169682, in force from April 25, 1979 to April 25, 1980, were not listed in the

1984 Complaint but are a part of this litigation.  Because these policies were not listed in

the 1984 Complaint, there is no "final judgment" against Enviro-Chem with respect to

these policies.

        However, for the reasons set forth in Section III. B. 2 below, there remains a

material issue of fact as to whether the default judgment against Enviro-Chem is limited

19

to matters at the Enviro-Chem Site, or whether the scope of the default judgment can

fairly be read as encompassing the Third Site.

### 2.      Identity of Causes of Action

#### a.      Agreed Judgment

The next issue to address is whether the Agreed Judgment can fairly be read as

encompassing the claims presented in the present action relating to the Third Site. The

operative language of the Agreed Judgment reads:

> That Auto-Owners has no duty to indemnify its insureds (Exhibit "A") and
> no liability to its insureds under either the general liability or umbrella
> policies identified in Exhibit "A", whether said liability is claimed under
> theories of reimbursement, subrogation, indemnity, nuisance, breach of
> contract, or otherwise, for any claims made against them arising out of the
> Superfund lawsuit or otherwise arising out of Enviro-Chem site activities or
> conditions which constitute release or otherwise of pollutants into the
> environment.

(Agreed Judgment ¶¶ 3, 4 (applying to the defendants)).

Generally, agreed judgments, like consent decrees, are to be interpreted essentially

as contracts. *Foufas v. Dru*, 319 F.3d 284, 286 (7th Cir. 2003) (citing *United States v.

ITT Continental Baking Co.*, 420 U.S. 223, 238 (1975)); *City of New Haven v. Allen

County Bd. of Zoning Appeals*, 694 N.E.2d 306, 310 (1998) (agreed judgments and

consent decrees are not judicial determinations of the rights of the parties but merely

record the agreement of the parties with respect to the matters in the litigation).

Paragraphs 1 though 4 of the Agreed Judgment are simply an agreement between and

among the signatories to be construed with normal principles of Indiana contract law.

When construing the meaning of a contract, the primary task of the court is to determine and effectuate the intent of the parties. *Bozarth v. Todd & Langley Constr.*, 857 N.E.2d 499 (Ind. Ct. App. 2006).  In interpreting a contract, the court gives the language of the contract its plain and ordinary meaning. *Trustcorp Mortgage Co. v. Metro Mortgage Co.*, 867 N.E.2d 203 (Ind. Ct. App. 2007).  Language is ambiguous only if it is susceptible to more than one interpretation and reasonable people could come to different conclusions as to its meaning. *Felker v. Sw. Emergency Med. Serv., Inc.*, 521 F.Supp.2d 857, 867 (S.D. Ind. 2007).  There are two types of ambiguity: patent and latent. *Id*.  A patent ambiguity is apparent on the face of the contract while a latent ambiguity arises "'only upon attempting to implement the contract.'" *Id*. (quoting *Oxford Fin. Group, Ltd. v. Evans*, 795 N.E.2d 1135, 1144 (Ind. Ct. App. 2003)).  Patent ambiguity presents a question of law, while latent ambiguity raises questions of fact.  *Id*.

The designated evidence shows that the cleanup of the Third Site was not a "claim made" before entry of the Agreed Judgment on August 29, 1991.  As early as 1987 it was reported to the EPA that pollution in the vicinity of the Third Site was different from the Enviro-Chem and NSL Sites.  In January 1990, the EPA informed the Enviro-Chem PRPs that the Third Site was not to be included in the proposed amendment to the 1987 ROD.  That is, the EPA informed the parties in January 1990 that it was not making a claim as to the Third Site.  In the June 1991 ROD Amendment, after a comment period that started in March 1991, the EPA expressly adopted the language set forth in the January 1990 proposal.  Thus, the Third Site is not within the language of "any claims made" in

Paragraph 3 or 4 of the August 1991 Agreed Judgment.  It was not until after the 1996

Third Site AOC that any claim was made by the EPA relating to the Third Site.

 The more difficult issue is whether the phrase "or otherwise arising out of Enviro-

Chem site activities or conditions which constitute release or otherwise of pollutants into

the environment" includes the Third Site.  Auto-Owners contends that the Enviro-Chem

Site encompassed the Third Site; thus, the Agreed Judgment applies to any claims made

to Auto-Owners with respect to the Enviro-Chem/Third Site.  (*See* Auto-Owners' Reply

at 15 ("The notion of Enviro-Chem and the Third Site as separate is a myth.")).  The

evidence presented, however, shows that the Third Site was treated differently by the

EPA.  Indeed, in all of the EPA records submitted to the court, the EPA referred to the

Third Site as a separate site from the Enviro-Chem Site.  In addition, the evidence shows

that the contamination at the Enviro-Chem Site did not migrate to the Third Site.  Ronald

Hutchens, the Project Coordinator at both the Enviro-Chem Site and the Third Site, filed

an affirmation stating that contamination at the Third Site was caused by the release of

pollutants at the Third Site, and the contamination at the Enviro-Chem was caused by the

release of pollutants at the Enviro-Chem Site.  (Hutchens Aff. ¶¶ 11, 12).  He further

testified that the remedy being implemented at the Enviro-Chem Site is different from the

remedy being implemented at the Third Site.  (*Id*. ¶ 10).  In short, the record is devoid of

any evidence stating that the two sites were one in the same or that the two sites were to

be treated as one in the same.  One could reasonably conclude then, that the fact that the

Third Site was not mentioned in the Agreed Judgment was not the result of poor drafting,

but rather reflected the parties' understanding that the Agreed Judgment was not meant to include the Third Site.

On the other hand, the evidence reflects that the contamination at the Third Site was a direct result of Enviro-Chem Site activities.  Indeed, it appears that the waste haulers merely "moved" the bulk storage tanks containing hazardous waste from the Enviro-Chem Site to the Third Site.  Thus, a credible argument could be made that the contamination at the Third Site "ar[ose] out of Enviro-Chem site activities . . . ."  Because the language employed in the Agreed Judgment is ambiguous as applied to the unusual facts of this case, the meaning of the phrase "or otherwise arising out of Enviro-Chem site activities or conditions which may constitute release or otherwise of pollutants into the environment. . . ." can only be determined by reference to extrinsic evidence and is thus, a question of fact.

### b.    Default Judgment

As noted above, Enviro-Chem is bound by the allegations of the 1984 Complaint as a result of the Default Judgment.  The Prayer for Relief in the 1984 Complaint mirrors the pertinent language employed in the Agreed Judgment.  (*Compare* Agreed Judgment ¶¶ 3, 4 *with* 1984 Complaint, Prayer for Relief ¶¶ 7.4, 7.6).  Accordingly, the court incorporates the argument set forth above to Enviro-Chem, and finds that an issue of fact exists as to whether the default judgment entered against Enviro-Chem contemplates the claims asserted in this action relating to the Third Site.

### 3.     Identity of Parties or Privies

Plaintiffs, as Trustees of the Third Site Trust Fund, are claiming coverage under the Auto-Owners' policies which were in play in the 1984 Action.  The issue presented is whether Plaintiffs, Enviro-Chem, and the Bankerts (i.e., Patricia, Jonathan, Jr., Gregory, Robert, Katherine, and Cynthia), are bound by the judgments entered in the 1984 Action.

Auto-Owners contends that as claimants under those policies, Plaintiffs "step into the shoes of Enviro-Chem and the Bankerts" and thus, are entitled to no greater rights under the policies than Enviro-Chem and the Bankerts had as insureds under those policies.  (*See* Auto-Owners' Reply at 10).  Because the Agreed Judgment in the 1984 Action explicitly stated that there is no coverage for the environmental contamination at the Enviro-Chem Site, Auto-Owners contends that Plaintiffs, as claimants under those policies, have no coverage for purposes of the Third Site.

In support of Auto-Owners' argument, Auto-Owners cites *Wolverine Mut. Ins. v. Vance*, 325 F.3d 939 (7th Cir. 2003).  In that case, Michael Gingery ("tortfeasor") shot Johnny Vance ("underlying claimant") outside the tortfeasor's home.  *Id*. at 941.  At the time of the shooting, the tortfeasor had a homeowner's insurance policy with Wolverine Mutual Insurance Company ("Wolverine"), which excluded personal liability for intentional acts.  *Id*. at 941.  Before the criminal case went to trial, the underlying claimant's family (the "plaintiffs") brought two civil Complaints against the tortfeasor, alleging that the tortfeasor negligently and carelessly shot the underlying claimant.  *Id*. at 941-42.  The tortfeasor was later convicted of attempted murder, a crime that required the

jury to find specific intent.  *Id*. at 941-42.  Wolverine then filed a declaratory judgment

action, claiming that the tortfeasor's conviction for an intentional act precluded liability

coverage.  *Id*. at 942.  The district court granted Wolverine's motion for summary

judgment, and the plaintiffs appealed.

The Seventh Circuit, relying on *Meridian Ins. Co. v. Zepeda*, 734 N.E.2d 1126

(Ind. Ct. App. 2000), found that the plaintiffs were not collaterally estopped from

bringing the action against Gingery because the plaintiffs were not parties to the criminal

case.  *Id*. at 943 ("Indiana courts have held that a tort victim is not collaterally estopped

from relitigating the insured's intent despite a verdict or a guilty plea in a criminal trial.").

The Court, however, found that Gingery was precluded from relitigating his intent

because he had the opportunity in this criminal case to do so.  *Id*.  The Court then stated:

> This preclusion prevents us from agreeing with the plaintiffs' second
> argument, that Wolverine owes Gingery indemnification in their civil suit.
> Even though a third-party victim may pursue legal theories in a civil action
> that an insured may not, the plaintiffs have not cited any Indiana precedent
> for the proposition that an insurance company must indemnify the insured
> based on that civil action.  In fact, the case law in Indiana supports the
> opposite conclusion.  Indiana is not a "direct action" state, meaning that an
> injured third party may not bring a direct action against a wrongdoer's
> liability insurer until he first obtains a judgment against the insured.
> *Rausch v. Reinhold*, 716 N.E.2d 993, 1002 (Ind. Ct. App. 1999); *Cromer v.
> Sefton*, 471 N.E.2d 700, 703 (Ind. Ct. App. 1984); *Donald v. Liberty Mutual
> Ins. Co.*, 18 F.3d 474, 480-81 (7th Cir. 1994).  Once a personal injury
> plaintiff succeeds in obtaining a judgment against the insured, he can bring
> an action against the liability carrier if it refuses to honor the terms of the
> insurance policy.  *Cromer*, 471 N.E.2d at 703.  In other words, in Indiana an
> injured plaintiff 'stands in the legal shoes' of the insured, and his claim can
> be no greater than the insured's claim would be against his own insurer
> under the insurance policy. [citations omitted].

Thus, because Wolverine's contractual duty runs only to Gingery, the plaintiffs can only recover insurance proceeds insofar as their rights derive from Gingery's rights under his homeowner's policy. [citations omitted].

*Id*. at 943-44.

Here, the Third Site Trust Fund is claiming coverage under Auto-Owners' policies issued to Enviro-Chem and Jonathan and Patricia Bankert.  Based upon the holding in *Wolverine* and *Zepeda*, the Third Site Trust Fund's claim against Auto-Owners can be no greater than the insureds' claim – *i.e*., Enviro-Chem and Jonathan and Patricia Bankert. As there exists an issue of fact as to whether the default judgment entered against Enviro-Chem and the Agreed Judgment entered against Jonathan and Patricia Bankert contains within its scope contamination of the Third Site, the court is unable to make a coverage determination at this time.

With respect to the other Bankerts named in the Complaint – Jonathan, Jr., Gregory, Robert, Katherine, and Cynthia – they did not participate in the 1984 Action. Moreover, they are not named insureds under the Auto-Owners policies.  (*See generally* Racher Aff., Exs. 1-7).

"Res-judicata bars subsequent suits against those who were not party to a prior suit if their interests are closely related to those who were."  *Tartt v. Nw. Comm. Hosp.*, 453 F.3d 817, 822-23 (7th Cir. 2006) (citing *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 971 (7th Cir. 1998)); *see also Studio Art Theatre of Evansville, Inc. v. City of Evansville*, 76 F.3d 128, 131 (7th Cir. 1996) (holding privity exists where there is a link between parties in

successive suits which share a "clear congruence of legal issues") (quotations omitted)). The only information the court possesses with respect to the Bankerts is that which is alleged in the Complaint – that they "had ownership interests in Enviro[-]Chem and were involved in the operations of Enviro[-]Chem." (Complaint ¶ 8). The court finds that the interest of the Bankerts are "closely aligned" with Enviro-Chem in that both would have sought coverage under the same policies for the same acts of the same company. Also, like the Plaintiffs, the Bankerts would step into the shoes of Enviro-Chem and would have no greater rights to coverage than Enviro-Chem. Because the scope of the default judgment entered against Enviro-Chem is ambiguous, the court is unable to determine whether the Bankerts are entitled to coverage under the Auto-Owners policies.

## IV.    Conclusion

For the reasons set forth above, the court finds that Plaintiffs' claims against Enviro-Chem are not time barred by Indiana Code § 23-1-45-7. The court further finds that an issue of fact remains as to the scope of the prior judgments obtained in the 1984 Action, and thus, the court is unable to find, as a matter of law, that the doctrine of res judicata applies. Accordingly, Auto-Owners' Motion for Summary Judgment (Docket # 29) is **DENIED**.

**SO ORDERED** this 16th_ day of March 2010.

_____ .
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

27

Electronic Copies to:

Scott Ernest Andres
DUE DOYLE FANNING  & METZGER
sandres@duedoyle.com

Barry C. Cope
BINGHAM MCHALE LLP
bcope@binghammchale.com

Danford Royce Due
DUE DOYLE FANNING  & METZGER
ddue@duedoyle.com

Frederick D. Emhardt
PLEWS SHADLEY RACHER & BRAUN
emhardt@psrb.com

Jeffrey William Ferrand
JENNINGS TAYLOR WHEELER & HALEY
jferrand@jtwhlaw.com

Willis Edward Huiras
DAVIS & SARBINOFF LLP
weh@d-slaw.com

Barbara A. Jones
CANTRELL, STRENKSI & MEHRINGER, LLP
bjones@csmlawfirm.com

Leon J. Letter
WILLINGHAM & COTE P.C.
lletter@willinghamcote.com

James P. Strenski
CANTRELL, STRENSKI & MEHRINGER, LLP
jstrenski@csmlawfirm.com

David L. Taylor
JENNINGS TAYLOR WHEELER & HALEY
dtaylor@jtwhlaw.com

John A. Yeager
WILLINGHAM & COTE' P.C.
jyeager@willinghamcote.com

S. Gregory Zubek
WHITHAM HEBENSTREIT & ZUBEK
sgz@whzlaw.com