UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION


NORMAN W. BERNSTEIN and PETER M.)
RACHER, AS TRUSTEES OF THE THIRD)
SITE TRUST FUND,                          )
       Plaintiffs,                    )
                        )
vs.                                             )         1:08-cv-0427-RLY-DML
                        )
PATRICIA A. BANKERT, individually,     )
and in her capacity as Personal            )
Representative of the Estate of Jonathan W. )
Bankert, Sr., JONATHAN W. BANKERT, )
JR., GREGORY BANKERT, ROBERT H. )
BANKERT, KATHERINE L. BANKERT, )
CYNTHIA A. RUSSELL, ENVIROCHEM )
CORPORATION, and AUTO OWNERS    )
MUTUAL INSURANCE COMPANY,        )
       Defendants.                   )


**ENTRY ON DEFENDANTS, PATRICIA A. BANKERT, INDIVIDUALLY AND IN
HER CAPACITY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF
JONATHAN W. BANKERT, SR., JONATHAN W. BANKERT, JR., GREGORY
BANKERT, ROBERT H. BANKERT, KATHERINE L. BANKERT, CYNTHIA A.
RUSSELL, AND ENVIROCHEM CORPORATION'S, JOINT MOTION FOR
SUMMARY JUDGMENT**

      Norman W. Bernstein and Peter M. Racher, as Trustees ("Plaintiffs" or "Trustees")

of the Third Site Trust Fund (the "Trust"), seek to recover environmental response costs

and other damages from the defendants, Patricia A. Bankert, individually and in her

capacity as Personal Representative of the Estate of Jonathan W. Bankert, Sr., Jonathan

W. Bankert, Jr., Gregory Bankert, Robert H. Bankert, Katherine L. Bankert, Cynthia M.

Russell (the "Bankert Defendants"), and Envirochem Corporation ("Envirochem") (collectively "Defendants") under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq*., and Indiana statutory and common law, for property referred to as the Third Site. Plaintiffs allege that the Defendants are liable for past and current environmental remediation of the Third Site by the Plaintiffs. Defendants now move for summary judgment on grounds that all of the Plaintiffs' claims are barred by the applicable statute of limitations. For the reasons set forth below, the court **GRANTS** the Defendants' joint motion.

## I.      Background

Third Site is a several acre tract of land near Zionsville, Indiana, and has been the subject of various environmental remediation actions taken by Plaintiffs. The majority of Third Site is owned by the Bankert Defendants. Envirochem was an Indiana corporation that was engaged in brokering and recycling industrial and commercial wastes, and operated under several names throughout the early to mid-1980s. It is not disputed that Envirochem operated parts of its business on land now referred to as Third Site. (Defendants' Ex. A, Plaintiffs' Complaint, ¶ 1). Envirochem was ultimately administratively dissolved by the Indiana Secretary of State on December 31, 1987. (Defendants' Ex. B, Indiana Secretary of State's Entity Information for Envirochem).

The environmental issues at the Third Site date back to the late 1980s, and are more thoroughly addressed in the court's Entry on Defendant Auto-Owners' Motion for Summary Judgment. Suffice it to say that soil testing at Third Site performed by the

Environmental Protection Agency ("EPA") in 1988 eventually led to a finding of contamination in and around Finley Creek, a body of water that flows into the White River, a major source of drinking water in the Indianapolis area. Because of the imminent danger this situation posed to the public health, the EPA issued a Section 106(a) Unilateral Administrative Order in March of 1996 (the "1996 Consent Order"). The 1996 Consent Order named the Bankerts and a long list of companies (referred to as "Site Generators") as Potentially Responsible Parties ("PRPs"). (Defendants' Ex. C, 1996 Consent Order, Attachment A).

In 1999, the Third Site Trust Fund was created to carry out obligations of the settlors of the Trust to the EPA at Third Site under a Unilateral Administrative Order by Consent (the "1999 Consent Order") that became effective in November 1999. (Plaintiffs' Ex. 1, Affirmation of Norman W. Bernstein ("Bernstein Aff.") ¶ 2; *see also* Defendants' Ex. D, EPA's 1999 Consent Order). The companies entering into the 1999 Consent Order, as PRPs, were obligated to fund the Trust as provided in the 1999 Consent Order and thereafter as assessed by the Trustees under the Trust Agreement to carry out the work. (Plaintiffs' Ex. 1, Bernstein Aff. ¶ 2; Defendants' Ex. D, 1999 Consent Order § VII). The Trustees are empowered to hold and manage funds, retain engineers and others to carry out the needed work, project future costs, obtain additional funds as needed from the settlors, and, subject to prior approval, bring suit against companies that do not meet their obligations to the Trust and third parties that have obligations to the Trust. (Plaintiffs' Ex. 1, Bernstein Aff. ¶ 2). In addition, the Trustees

may take any other steps necessary to carry out the cleanup at the Site under the terms of the Consent Orders with the EPA. (*Id*.).

The 1999 Consent Order had two separate parts, one regarding "Premium Respondents" and one regarding "Non-Premium Respondents." Under the terms of the 1999 Consent Order, all Respondents were alleged by EPA to be liable persons under Section 107(a) of CERCLA. (Defendants' Ex. D, 1999 Consent Order § IV).

The Premium Respondents were parties found by EPA to be *de minimis*. (Defendants' Ex. D, 1999 Consent Order § IV). They settled and paid a sum certain pursuant to Section 122(g)(1) of CERCLA. (*Id*.). The Premium Respondents did not undertake to conduct the work required by the Order, nor did they become settlors of the Trust. (*Id*.; Plaintiffs' Ex. 1, Bernstein Aff. ¶ 5).

The 1999 Consent Order required the Non-Premium Respondents to conduct an engineering evaluation and costs analysis ("EE/CA") to study conditions at the site and to evaluate alternative response actions. (*Id*. § I). An EE/CA is a step in the removal action process under the National Contingency Plan and is classified by EPA as a "removal action." (Plaintiffs' Ex. 2, Affirmation of Ronald E. Hutchens ("Hutchens Aff.") ¶ 4).

The Non-Premium Respondents accepted the Order pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), committed to do the work required by the Order, and became settlors of the Trust with the obligation to fund the Trust to the extent needed to carry out the work provided for in the Order. (*Id*. ¶ 6; Defendants' Ex. D, 1999 Consent Order § VII).

EPA subsequently approved the work done under the 1999 Consent Order and, based on the results of the EE/CA, in 2001 issued an Enforcement Action Memorandum selecting a "Non-Time Critical Removal Action" for the Site and selecting clean-up objectives. (Plaintiffs' Ex. 1, Bernstein Aff. ¶ 7; Plaintiffs' Ex. 2, Hutchens Aff. ¶ 5 and Ex. 2).

In November 2002, EPA entered an Administrative Order on Consent (the "2002 Consent Order") to implement the remedy called for in the Enforcement Action Memorandum, which was appended to the 2002 Consent Order as Attachment D. (Plaintiffs' Ex. 1, Bernstein Aff. ¶ 8; Defendants' Ex. E, 2002 Consent Order). The 2002 Consent Order largely followed the same pattern as the 1999 Consent Order. (Plaintiffs' Ex. 1, Bernstein Aff. ¶ 9).

EPA asserted that all Respondents were liable persons under Section 107(a) of CERCLA. Premium Respondents that EPA determined were *de minimis* settled and paid a specified sum pursuant to the *de minimis* settlement provisions of Section 122(g)(1) of CERCLA. (Plaintiffs' Ex. 1, Bernstein Aff. ¶ 10; Defendants' Ex. E, 2002 Consent Order § IV). Non-Premium Respondents, by contrast, were required to perform the removal actions required by the Order to implement the Enforcement Action Memorandum pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a). (Plaintiffs' Ex. 1, Bernstein Aff. ¶ 11; Defendants' Ex. E, 2002 Consent Order § V). Additionally, Non-Premium Respondents were required to sign an Amendment to the Trust and to fund the Trust with monies as needed to carry out the required removal action. (Plaintiffs' Ex. 1,

Bernstein Aff. ¶ 11; Defendants' Ex. E, 2002 Consent Order §§ VII.A., VII.C). Premium Respondents were not required to (and did not) sign the Amendment to the Trust. They simply paid a fixed amount in settlement. (Plaintiffs' Ex. 1, Bernstein Aff. ¶ 12; Defendants' Ex. E, 2002 Consent Order § VII.B.1).

The implementation of the removal action called for in the Enforcement Action Memorandum and the 2002 Consent Order at the Third Site is still underway and has not been completed. (Plaintiffs' Ex. 1, Bernstein Aff. ¶ 13; Plaintiffs' Ex. 2, Hutchens Aff. ¶ 8).

Plaintiffs filed the present cost recovery action against the Defendants and their insurance carriers on April 1, 2008. The Trust seeks only the costs the Trust itself has incurred for cleanup activities.

## II.     Summary Judgment Standard

Disposition of a case on summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Defendants, as the party asserting the affirmative defense of the statute of limitations, bear the burden of proving its applicability to the Plaintiffs' claims. *Law v. Medco Research, Inc.*, 113 F.3d 781, 786 (7th Cir. 1997); *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1279 (Ind. 2009). To survive summary judgment, the Plaintiffs, as the responsive party, "may not rely merely on allegations or denials in its own pleading," but must present

specific facts to show that there is a genuine issue of material fact. FED. R. CIV. P. 56(e);

*see also Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 265 (7th Cir.

1996) (citing *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991)).

## III.    Discussion

The issue raised in the Defendants' Motion for Summary Judgment is whether the

statute of limitations bars the Plaintiffs' claims. Defendants maintain that the Plaintiffs'

claims in Counts I and II of their Complaint are claims for contribution. The statute of

limitations for a contribution action is three years after the date of the administrative order

or the entry of a judicially approved settlement. 42 U.S.C. § 9613(g)(3)(B). If the

Defendants are correct, the Plaintiffs' CERCLA claims raised in Counts I and II of their

Complaint are barred by the statute of limitations. Defendants also maintain that the

Plaintiffs' state law claims asserted in Counts III-V are likewise barred by the applicable

state statute of limitations.

### A.    Counts I and II (the CERCLA Counts)

"CERCLA is a comprehensive federal law governing the remediation of sites

contaminated with pollutants." *Consol. Edison Co. of New York v. UGI Util., Inc.*, 423

F.3d 90, 94 (2d Cir. 2005)). Two of its primary goals include: (1) encouraging the timely

cleanup of hazardous waste sites, and (2) placing the cost of the cleanup on those

responsible for creating or maintaining the hazardous conditions. *Id.* (quoting *Control

Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 935-36 (8th Cir. 1995)). In order to achieve

these goals, CERCLA provides for "two distinct remedies for the recoupment or

reimbursement for cleanup and prevention costs at contaminated sites." *Chitayat v. Vanderbuilt Assoc.*, – F. Supp. 2d – , 2010 WL 1049194, at *5 (E.D.N.Y. March 22, 2010) (citing *Consol. Edison*, 423 F.3d at 90). Section 107(a) allows for cost recovery actions by the government and private parties against potentially responsible parties. 42 U.S.C. § 9607(a); *United States v. Atl. Research Corp.*, 127 S.Ct. 2331, 2338 (2007). Section 113(f)(1) and Section 113(f)(3) allow for contribution actions. Section 113(f)(1) provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under . . . section 9607(a) of this title." Section 113(f)(3)(B) provides that "[a] person who has resolved its liability to the United States or a State for some or all of the response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2)." 42 U.S.C. § 9613(f)(3)(B).

### 1. Section 113 Contribution Claim

The court will begin its discussion with a brief synopsis of two recent Supreme Court decisions. In *Cooper Industries, Inc. v. Aviall Servs., Inc.*, the Supreme Court held that Section 113(f)(1) authorizes a private party to seek contribution from other liable parties only if the action is brought "during or following" a specified civil action. 125 S.Ct. 577, 583 (2004). The Court reasoned that because the plaintiff voluntarily cleaned up the contaminated site, and thus, had not been subject to a civil action, the plaintiff could only bring a Section 107(a) claim for cost recovery against the defendant. *Id.* at

583-84.

This decision created a doctrinal problem because prior to its issuance, several Circuit Courts had held that potentially responsible parties that had voluntarily cleaned up a contaminated site, whether by simple agreement or by entering into a consent order, could only sue under Section 113, as a Section 107(a) cost recovery action was strictly reserved for "innocent" parties. *See Atl. Research*, 127 S.Ct. at 2334; *see also W.R. Grace & Co. v. Zotos Int'l, Inc.*, 559 F.3d 85, 89 (2d Cir. 2009) ("Before *Cooper Industries*, most courts, including ours, held that in connection with application for reimbursement from other potentially responsible parties, only section 113(f) provided a cause of action to parties who would be liable, and section 107(a) was reserved for innocent parties."). In *Atlantic Research*, the Supreme Court attempted to resolve this issue, and held that a private party who voluntarily undertakes a cleanup action – even one potentially liable under CERLCA – could bring a Section 107(a) cost recovery action. *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 218 (3d Cir. 2010) (citations omitted). The Court explained the interplay between the rights established in Section 107(a) and Section 113(f) as follows:

> [T]he remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action to persons in different procedural circumstances. Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover

under § 107(a).  As a result, though eligible to seek contribution under § 113(f), the PRP cannot simultaneously seek to recover the same expenses under § 107(a).

*Atl. Research*, 127 S.Ct. at 2338 (internal citations omitted).

In the present case, the Plaintiffs contend that they "voluntarily" entered into the 1999 and 2002 Consent Orders, and that, pursuant to *Atlantic Research*, their claims are for cost recovery under Section 107(a).  In support of their argument, the Plaintiffs cite the first sentence of the opening paragraph of the 1999 and 2002 Consent Orders, which reflects that the Order "is entered voluntarily by the [EPA] and the Respondents listed in Attachment A."  (Defendants' Ex. D, 1999 Consent Order, § I; Defendants' Ex. E, 2002 Consent Order, § I).  However, one need read no further than the following paragraph to find that the Plaintiffs did not choose to clean up the property of their own free will: "This Order requires, among other things, certain Respondents to perform response actions . . . ." (*Id.*).

A further review of the history of the EPA's involvement at the Third Site forecloses this issue.  Indeed, the 1999 Consent Order *required* the Non-Premium Respondents to conduct an EE/CA to study conditions at the Site.  (Plaintiffs' Ex. 1, Bernstein Aff. ¶ 3).  The EPA later approved the work done under the 1999 Consent Order and, based on the results of the EE/CA, in 2001 issued an Enforcement Action Memorandum selecting a "Non-Time Critical Removal Action" for the Site and selecting cleanup objectives.  (*Id.* ¶ 7).  The following year, the Trust entered into the 2002 Consent Order with the EPA to implement the remedy called for by the EPA in the

Enforcement Action Memorandum. (*Id.* ¶ 8). The 2002 Consent Order specifically orders the Non-Premium Respondents to comply with its provisions, and to reimburse the Trust with monies as needed to carry out the removal action. (Defendants' Ex. E, 2002 Consent Order §§ V, VII). The 2002 Consent Order also provides for penalties in the event the Non-Premium Respondents do not comply. (*Id.*, § X). Lastly, "upon the complete and satisfactory performance by Respondents of their obligations under the [Consent Orders]," the Government covenants not to sue or take administrative action against Respondents under Section 107(a) of CERCLA, for the recovery of past response costs and oversight costs. (Defendants' Ex. D, 1999 Consent Order, § XIII; Defendants' Ex. E, 2002 Consent Order, § XIII). Given the firm language and directives outlined in the 1999 and 2002 Consent Orders, the court finds that the Plaintiffs did not "voluntarily" undertake the cleanup of Third Site. Thus, pursuant to *Cooper Industries* and *Atlantic Research*, the Plaintiffs' claims are not claims for cost recovery; rather, they are claims for contribution.

As noted above, there are two different types of claims for contribution: Section 113(f)(1) ("during or following" specified civil actions) and Section 113(f)(3)(B) (after an administrative or judicially approved settlement that resolves liability to the United States or the State). The Plaintiffs argue that there has been no "civil action" in this case, and thus, there can be no claim for contribution. The Plaintiffs fail to mention Section 113(f)(3)(B). Consent Orders of the type presented here, wherein the Respondents have resolved "some or all" of their CERCLA liability with the United States, are

administrative settlements within the meaning of Section 113(f)(3)(B).  *See Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 126-27 (2d Cir. 2010) (finding that the plaintiff's Consent Order with the New York Department of Environmental Conservation ("DEC") was an "administrative settlement" pursuant to Section 113(f)(3)(B) because it released the plaintiff from liability under CERCLA); *Chitayak*, – F. Supp. 2d – , 2010 WL 1049194, at * 10 (finding that an administrative order on consent with the DEC qualified as an administrative settlement within the meaning of Section 113(f)(3)(B) because it referred to the resolution of plaintiff's liability under CERCLA);  *Morrison Enterp., LLC v. Dravo Corp.*, 2009 WL 4326461, * 1 (D. Neb. Nov. 24, 2009) (noting that the plaintiff did not dispute that the administrative orders on consent were administrative settlements per Section 113(f)(3)(B)).  Because the Consent Orders in this case qualify as "administrative settlements" under Section 113(f)(3)(B), the Trust may only bring a claim for contribution against the Defendants.

> a.    **The Trustees**

The Plaintiffs raise two basic arguments as to why Section 113(f)(3)(B) does not apply.  First, they contend that the Trustees are not liable parties under CERCLA and did not sign either the 1999 or 2002 Consent Orders.  The 1999 Consent Order required the Non-Premium Respondents to sign the Trust Agreement that created the Third Site Trust Fund.  (Defendants' Ex. D, 1999 Consent Order, § VII).  The purpose of the Trust was to confer upon the Trustees "sufficient powers and authority to collect and administer funds from the Premium and Non-Premium Respondents necessary to finance the EE/CA and to

make other payments described in this Order." (*Id.*). The 2002 Consent Order likewise

conferred upon the Trustees "sufficient powers and authority to collect and administer

funds from the Premium and Non-Premium Respondents necessary to finance the

response actions required by this Order and to make other payments necessary or

appropriate for the implementation of this Order." (Defendants' Ex. E, 2002 Consent

Order, § VII). Moreover, the Consent Orders unequivocally provide that the Order is

binding not only upon the EPA and Respondents, but also upon the Respondents'

Trustees. (Defendants' Ex. D, 1999 Consent Order, § II; Defendants' Ex. E, 2002

Consent Order, § II). Thus, the Trust is not some outside entity that voluntarily undertook

the role of managing the removal action at the Third Site. Rather, the Trust acquired the

rights of the settlors of the Trust (the PRPs) to initiate and comply with the EPA remedial

action, and, in that capacity, "stands in the shoes" of the PRPs. *See Evansville Greenway*

*and Remediation Trust v. So. Ind. Gas & Elec. Co., Inc.*, 661 F. Supp. 2d 989, 1004-05

(S.D. Ind. 2009) (finding that the Trust acquired no greater rights than those of the settlors

of the Trust); *see also Karras v. Teledyne Indust., Inc.*, 191 F. Supp. 2d 1162, 1170 (S.D.

Cal. 2002) ("Thus, the trusts stand in the shoes of PRPs because they have undertaken the

liability for clean-up of the Chatham Site."). Accordingly, the Trustees, as the fiduciaries

of the Trust, are liable parties under CERCLA, notwithstanding the fact that they did not

sign the Consent Orders.

### b. *W.R. Grace*

Second, the Plaintiffs cite *W.R. Grace & Co. v. Zotos Int'l, Inc.*, 559 F.3d 85 (2d

Cir. 2009) for the proposition that administrative settlements like the 1999 and 2002

Consent Orders allow not only a contribution action, but also a cost recovery action.

However, the administrative order in *W.R. Grace* settled claims under New York law, not

CERCLA.  This is a dispositive difference, as the Second Circuit explained:

> Consolidated Edison made clear that "only when liability under CERCLA
> claims, rather than some broader category of claims is resolved" does
> section 113(f)(3)(B) create a right to contribution. [425 F.3d] at 95.
> Accordingly, the "operative question in deciding whether [Grace's] claims
> arise under section 113(f)(3)(B) . . . is whether [Grace] resolved its
> CERCLA liability before bringing suit."  *Id*. at 96.

559 F.3d at 90-91.  Because the consent order in *W.R. Grace* made reference to state law

claims as opposed to CERCLA claims, the order "was not an administrative settlement

cognizable under section 113(f)(3)(B) . . . ."  *Id*. at 91.  Conversely, the 1999 and 2002

Consent Orders did resolve "some or all" of the Trustees' CERCLA liability.  (*See*, *e.g.*,

Defendants' Ex. D, 1999 Consent Order, § VII (providing that Non-Premium

Respondents must pay funds to the Trust sufficient to pay for the response action);

Defendants' Ex. E, 2002 Consent Order, § VII).  Accordingly, the court finds that the

Plaintiffs have brought claims for contribution under Section 113(f)(3)(B) of CERCLA.

### 2.      The Open Question

The Supreme Court, in *Atlantic Research*, left open the question of whether the

plaintiffs, arguably in the position of the Plaintiffs in this case, could bring a Section

107(a) claim in addition to a Section 113(f) claim.  The Court stated:

> We do not suggest that §§ 107(a)(4)(B) and 113(f) have no overlap at all.
> For instance, we recognize that a PRP may sustain expenses pursuant to a

consent decree following a suit under . . . § 107(a). In such a case, the PRP does not incur costs voluntarily but does not reimburse the costs of another party. We do not decide whether these compelled costs of response are recoverable under § 113(f), § 107(a), or both. For our purposes, it suffices to demonstrate that costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f). Thus, at a minimum, neither remedy swallows the other . . . .

127 S. Ct. at 2338 n.6 (citations omitted).

At oral argument, the Plaintiffs argued that this case falls into this "open question," as the costs they seek were not "incurred voluntarily" because the parties were mandated by the EPA to cleanup the property, nor were they "reimbursed to another party" because they were expended in performing the EPA remedial action.

The Third Circuit in *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, addressed this very issue. 602 F.3d 204 (3d Cir. 2010). In that case, the plaintiffs brought suit against the defendants for cost recovery and contribution under CERCLA to recover costs that the plaintiffs had paid to the EPA pursuant to certain consent decrees or that they had provided as a consequence of the cleanup of hazardous substances at the Boarhead Site. *Id*. at 210. (At the time the opinion was issued, all of the defendants had settled out or were dismissed except Carpenter Technology Corporation ("Carpenter")). The Court found that the claims raised by the plaintiffs associated with the consent decree fell within the "open question of law" noted above; namely, "whether, in addition to § 113(f) claims, plaintiffs such as these have § 107(a) claims for expenses sustained pursuant to a consent decree following a CERCLA suit." *Id*. at 227-28. In resolving this issue, the Court

turned to the *Atlantic Research* opinion for guidance, and stated:

> In *Atlantic Research*, immediately after setting forth this unanswered question, and after suggesting that there is, in fact, some "overlap" between § 107(a) and § 113(f), the Supreme Court stated that "a defendant PRP in such a § 107(a) [joint and several liability] suit could blunt any inequitable distribution of costs by filing a § 113(f) counterclaim." The Court explained that any fear that "PRPs will eschew equitable apportionment under § 113(f) in favor of joint and several liability under § 107(a)" is mitigated by the fact that "a § 113(f) counterclaim would necessitate the equitable apportionment of costs among the liable parties, including the PRP that filed the § 107(a) action."

*Id*. at 228 (internal citations omitted). The Court noted that Carpenter would not be able to bring a Section 113(f) counterclaim against the plaintiffs, because Section 113(f)(2)[1] would prevent him from doing so. *Id*. The Court reasoned that if it allowed the plaintiffs to bring a Section 107(a) claim and assert joint and several liability against Carpenter, the plaintiffs would be able to recover 100 percent of their own costs, even though they were also responsible for the contamination at the Boarhead Site. *Id*. Because this would be an inequitable result, the Court held that the plaintiffs did not have Section 107(a) claims for costs incurred pursuant to the consent decrees. *Id*. at 229 ("[W]e hold that plaintiffs . . . , who if permitted to bring a § 107(a) claim would be shielded from contribution counterclaims under § 113(f)(2), do not have any § 107(a) claims for costs incurred pursuant to consent decrees in a CERCLA suit.").

In the present case, Section XV of the 1999 and 2002 Consent Orders provide the

---

[1] That section provides that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matter addressed in the settlement." 42 U.S.C. § 9613(f)(2).

Respondents with "protection from contribution actions or claims to the extent provided by Section 113(f)(2) . . . ." (Defendants' Ex. D, 1999 Administrative Order by Consent, Section XV; Defendants' Ex. E, 2002 Consent Order, § XV). If the Plaintiffs were allowed to bring a Section 107(a) cost recovery claim for the costs that they seek, the contribution bar[2] in Section XV of the Consent Orders would effectively prevent the Defendants from filing a counterclaim against them for contribution. To prevent this injustice, the court agrees with the *Agere Systems* Court that the Plaintiffs may not pursue a cost recovery action under the facts and circumstances of this case.

### 3.    Statute of Limitations

The statute of limitations for claims for contribution is governed by Section 113(g)(3), and provides, in relevant part, as follows:

> (3)    Contribution. No action for contribution for any response costs or damages may be commenced more than 3 years after –
>
> (A)    the date of judgment in any action under this Act for recovery of such costs or damages, or
>
> (B)    the date of an administrative order under section 122(g) [42 U.S.C. § 9622(g)] (relating to de minimis settlements) or 122(h) [42 U.S.C. § 9622(h)] (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

The Plaintiffs contend that the face of this statute does not apply to this case, as

---

[2]  At oral argument, Plaintiffs' counsel represented that the Non-Premium Respondents waived the contribution bar. The court finds that the waiver, at this late date, was self-serving and therefore, ineffective. *See Bank v. Truck Ins. Exch.*, 51 F.3d 736, 739 (7th Cir. 1995) ("[P]arties should not be allowed to get out of their written contracts by self-serving testimony. . . .").

only the Premium Respondents entered into *de minimis* settlements. The court has read

numerous cases dealing with this subsection, and cannot find a case that has required that

the settlement be *de minimis* in order for the three-year statute of limitations to apply.

*See, e.g., Cooper Indus.*, 125 S.Ct. at 584 ("Section 113(g)(3) then provides two

corresponding 3-year limitations periods for contribution actions, one beginning on the

date of judgment, § 113(g)(3)(A), and one beginning at the date of settlement, §

113(g)(3)(B)."); *Niagara Mohawk*, 596 F.3d at 128 n.19 (2d Cir. 2010) (" . . . claims

under § 113 have a three-year statute of limitations"); *Chitayak*, – F. Supp. 2d – , 2010

WL 1049194, at *12 (same). In the absence of any authority to the contrary, the court

will apply the three-year statute of limitations to the Plaintiffs' contribution claims. As

the Plaintiffs filed their Complaint on April 1, 2008, the court must find that the

Plaintiffs' claims based on the 1999 and 2002 Consent Orders are barred by Section

113(g)(3) of CERCLA.

## B.     State Law Claims

In addition to the federal CERCLA claims, Plaintiffs have also asserted various

state law claims against the Defendants, including negligence (Count IV), nuisance

(Count V), and an action pursuant to Indiana's Environmental Legal Action Statute

("ELA") (Count III). The court will begin its discussion with the Plaintiffs' common law

claims for negligence and nuisance.

### 1.     Indiana Common Law Claims

In *Cooper Industries, LLC v. City of South Bend*, the Indiana Supreme Court held

that the general six-year statute of limitation applies to claims for negligence and nuisance actions pertaining to damage to real property. 899 N.E.2d at 1279 (citing IND. CODE § 34-11-2-7). "Under Indiana's discovery rule, a cause of action accrues, and the limitation period begins to run, when a claimant knows or in the exercise of ordinary diligence should have known of the injury." *Id*. at 1280. For an action to accrue, the full extent of the damage need not be known; it is sufficient if "some" ascertainable damage has occurred. *Id*. (citing *Pflanz v. Foster*, 888 N.E.2d 756, 759 (Ind. 2008)). The determination of when an action accrues is generally a question of law. *Id*.

Plaintiffs contend that they did not have knowledge of the damages related to the negligence and nuisance counts. The Complaint reads as though Counts IV and V seek damages for the environmental contamination at the Third Site. (*See* Complaint, Count IV (alleging, in part, that the Bankerts breached a duty by allowing the release of hazardous substances into the environment at the Third Site); Count V (alleging that the hazardous substances released on the Third Site have created a nuisance as defined by Indiana law)). Given the decades of documentation related to the Third Site, it strains credulity for the Plaintiffs to contend that they did not have knowledge of this fact.

Plaintiffs also rely on the continuing wrong theory – i.e., that the damages to the property are of a continuing nature and remain unabated – in an effort to recover damages that occurred within the statute of limitations. "'A continuing wrong is established by continuing wrongful acts, not by continual harmful effects from an original, completed act.'" *Village of Milford v. K-H Holding Corp.*, 390 F.3d 926, 933 (6th Cir. 2004)

(quoting *Horvath v. Delida*, 540 N.W.2d 760, 763 (1995)); *Forest City Enter. v. Leemon Oil Co.*, 577 N.W.2d 150, 159 n.7  (Mich. Ct. App. 1988) (finding that an action based on an environmental cleanup was time barred because a "continuing wrong is established by continuing tortious acts, not by continual harmful effects from an original, completed act").  In the present case, there is no evidence that the Defendants continued to release pollutants into the area known as the Third Site once the EPA stepped in over two decades ago.  Therefore, the continuing wrong theory has no application to this case. Accordingly, Plaintiffs' common law claims for negligence and nuisance are barred by the statute of limitations.

## 2.    Indiana ELA Claim

Indiana's ELA statute provides for an "environmental legal action" to "recover reasonable costs of a removal or remedial action" involving hazardous substances or petroleum.  Ind. Code § 13-30-9-2.  The ELA contains no provision for limitation of actions; therefore, the courts have applied Indiana's ten-year statute of limitations to ELA claims for contribution.  *See* IND. CODE § 34-11-1-2; *Pflanz*, 888 N.E.2d at 758.  The Court in *City of South Bend* held that no claim under the ELA could begin to run prior to the ELA's effective date, February 28, 1998.  899 N.E. 2d at 1284-86.

The court is once again faced with the issue of when this cause of action accrued. In *Pflanz*, the Indiana Supreme Court held that a cause of action for contribution did not accrue until the owners of the property were ordered by the Indiana Department of Environmental Management to clean up the property.  *Pflanz*, 888 N.E.2d at 759.  At oral

20

argument, the Plaintiffs cited this case for the proposition that they were not ordered to clean up the property until the 1999 Consent Order was issued, and that therefore, the cause of action did not accrue until 1999. The Plaintiffs, however, fail to mention that the first Administrative Order by Consent was issued in 1996. (Defendants' Ex. C, 1996 Consent Order). Although the Trust was not formed at that time, "'third parties are usually held accountable for the time running against their predecessors in interest.'" *Id.* (quoting *Mack v. Am. Fletcher Nat'l Bank & Trust Co.*, 510 N.E.2d 725, 734 (Ind. Ct. App. 1987)). Accordingly, the court finds that Plaintiffs' ELA claim is also barred by the statute of limitations.

## IV. Conclusion

For the reasons set forth above, the court **GRANTS** the Defendants' Joint Motion for Summary Judgment (Docket # 143). The court requests that the parties apprise it as to whether the ruling issued today affects the only remaining claim in this action, the declaratory judgment action asserted in Count VII (there is no Count VI), within fifteen (15) days of the date of this Entry.

**SO ORDERED** this 29th day of September 2010.

RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Scott Ernest Andres
DUE DOYLE FANNING  & METZGER
sandres@duedoyle.com

Norman W. Bernstein
N.W. BERNSTEIN & ASSOCIATES LLC
nwbernstein@nwbllc.com

Danford Royce Due
DUE DOYLE FANNING  & METZGER
ddue@duedoyle.com

Frederick D. Emhardt
PLEWS SHADLEY RACHER & BRAUN
emhardt@psrb.com

Jeffrey William Ferrand
JENNINGS TAYLOR WHEELER & HALEY
jferrand@jtwhlaw.com

Willis Edward Huiras
DAVIS & SARBINOFF LLP
weh@d-slaw.com

Leon J. Letter
WILLINGHAM & COTE' P.C.
lletter@willinghamcote.com

David L. Taylor
JENNINGS TAYLOR WHEELER & HALEY
dtaylor@jtwhlaw.com

John A. Yeager
WILLINGHAM & COTE' P.C.
jyeager@willinghamcote.com

S. Gregory Zubek
WHITHAM HEBENSTREIT & ZUBEK
sgz@whzlaw.com